J-S01012-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ERVIN REYES | : | |
| | : | |
| Appellant | : | No. 991 MDA 2016 |

Appeal from the PCRA Order May 24, 2016
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0001001-2014

BEFORE:   GANTMAN, P.J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED FEBRUARY 09, 2017**

Appellant, Ervin Reyes, appeals from the order entered in the Lancaster County Court of Common Pleas, which denied his first petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

In its opinion, the PCRA court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.  We add only that Appellant timely filed a notice of appeal on June 15, 2016.  On June 17, 2016, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Appellant timely filed his concise statement on July 6, 2016.

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

Appellant raises the following issue for our review:

WHETHER THE [PCRA] COURT ERRED IN DENYING POST-CONVICTION RELIEF WHERE THE FAILURE OF DEFENSE COUNSEL TO DEVELOP AVAILABLE ALIBI EVIDENCE COMPELLED APPELLANT TO PLEAD GUILTY AND APPELLANT WAS PREJUDICED THEREBY?

(Appellant's Brief at 4).

Our standard of review of the denial of a PCRA petition is limited to examining whether the record supports the court's determination and whether the court's decision is free of legal error. *Commonwealth v. Ford*, 947 A.2d 1251 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). If the record supports a post-conviction court's credibility determination, it is binding on the appellate court. *Commonwealth v. Dennis*, 609 Pa. 442, 17 A.3d 297 (2011).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Jeffery D. Wright, we conclude Appellant's issue merits no relief. The PCRA court opinion comprehensively discusses and properly disposes of the questions presented. (*See* PCRA Court Opinion, filed May 24, 2016, at 11-25) (finding: during guilty plea colloquy, Appellant admitted he committed sex offenses, notwithstanding his trip to New York; Appellant's current claim

contradicts his police confession, in which Appellant did not mention his trip to New York and in which he also stated his daughter, victim, always told truth; relevant date of Appellant's purported alibi is from approximately December 22, 2008, to January 7, 2009; dates of alibi do not coincide with dates of offenses; discovery documents concerning Appellant's return from New York negate Appellant's supposed alibi; even if Appellant returned from New York on January 7, 2009, Appellant would have been in Lancaster and able to commit charged offenses within time period described in police reports and Affidavit of Probable Cause; plea counsel testified credibly at PCRA hearing that he had discussed dates of offenses and alibi claim with Appellant several times; plea counsel discussed with Appellant why alibi was without merit because alibi only covered first week of January 2009; on other hand, Appellant's PCRA hearing testimony was not credible; plea counsel and Appellant knew of dates of charges well in advance of guilty plea and purported discrepancy in dates did not actually mislead, prejudice, or surprise Appellant; plea counsel had reasonable basis for not further investigating or developing alibi claim, because purported alibi was meritless; plea counsel's failure to raise purported alibi caused Appellant no prejudice; Appellant lacks any evidence to support his claim of ineffective assistance of counsel beyond his bare assertion that counsel failed to pursue alibi claim; likewise, Appellant presented no evidence to show he would have elected to go to trial if plea counsel had pursued alibi claim). We accept the

PCRA court's reasoning. Even though the criminal information gives a generic date for the offenses as "01/01/2009," the Commonwealth did not have to prove the offenses actually occurred on a specific date. *See **Commonwealth v. Einhorn***, 911 A.2d 960, 978 (Pa.Super. 2006), *appeal denied*, 591 Pa. 723, 920 A.2d 831 (2007) (holding exact date of offense is unnecessary to provide sufficient notice, where date is not essential element of offense). Contrary to Appellant's proposition that the offense must be confined to an exact date in order for the criminal information to be valid, Rule 560 specifically allows "an allegation that [the offense] was committed on or about any date within the period fixed by the statute of limitations shall be sufficient" if the exact date of the alleged crime is unknown. *See* Pa.R.Crim.P. 560(B)(3).

Moreover, we observe the criminal complaint and the affidavit of probable cause refer to the date of the offense(s) as "January 2009" and "a few weeks after New Year's Day." So, Appellant can hardly claim he was misled by the criminal information, which referred to a basic offense date of "01/01/2009." ***See Einhorn, supra*** (stating variance is not fatal to indictment "unless it could mislead the defendant at trial, impairs a substantial right, or involves an element of surprise that would prejudice the defendant's efforts to prepare his defense"). Accordingly, we affirm on the basis of the PCRA court's opinion.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/9/2017

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA      :

           v.                       :     No. 1001-2014

ERVIN REYES                      :

## OPINION

BY: WRIGHT, J.                             May 24 , 2016

Before the Court is Petitioner Ervin Reyes' Amended Petition for Post-Conviction Relief pursuant to the Post Conviction Relief Act ("PCRA"). In his Amended Petition, Petitioner claims ineffective assistance of guilty plea counsel to "investigate, litigate and advocate" Petitioner's alibi defense.[1] As a result of this allegedly ineffective assistance, Petitioner claims that his guilty plea was unlawfully induced, that he pled guilty to offenses he did not commit, and that he is "innocent of the crimes as charged in the information."[2] For the reasons that follow, Petitioner's Amended PCRA Petition is denied.

## BACKGROUND

On Criminal Information 1001-2014, Petitioner was charged with one count each of Rape of a Child (F-1),[3] Aggravated Indecent Assault of a Child (F-1),[4] Involuntary Deviate Sexual Intercourse with a Child (F-1),[5] Indecent Assault of a Person Less than

---

[1] Def's Am. Mot. for Post-Conviction Relief ¶ 7a.
[2] Def's Am. Mot. for Post-Conviction Relief ¶ 7b.
[3] 18 Pa. C.S.A. § 3121(c).
[4] 18 Pa. C.S.A. § 3125(b).
[5] 18 Pa. C.S.A. § 3123(b).

1

13 Years of Age (F-3),[6] Incest (F-2),[7] and Corruption of a Minor (M-1).[8] The charges resulted from a sexual encounter between Petitioner and his minor[9] biological daughter that occurred around the month of January of 2009 and was reported on August 14, 2013. (Aff. Prob. Cause ¶¶ 1-2.) Petitioner's daughter reported that "approximately (4) four years ago, during the winter time, a few weeks after [New Year's Day]" her father had "entered her room and laid down beside her on the bed" and then "rubb[ed] her vagina with his hands . . . pulled down her shorts . . . inserted his finger inside her vagina . . . lick[ed] the inside of her vagina with his tongue . . . [and] then climbed on top of her . . . insert[ing] his penis inside her vagina." (Compl. at 3-5; Aff. Prob. Cause ¶¶ 1-3. ) Petitioner's daughter repeated these allegations during a subsequent police interview. (Aff. Prob. Cause ¶ 3.) During his own police interview, Petitioner "stated [that his daughter was] telling the truth" and admitted to "insert[ing] his finger into [his daughter's] vagina" and to "inserting the tip of his penis into [his daughter's] vagina." (Aff. Prob. Cause ¶ 4.)

A Guilty-Plea/Sentencing hearing was held on December 1, 2014.[10] During the proceeding, Petitioner was represented by Samuel Encarnacion, Esquire. N.T. Guilty Plea & Sentencing Hr'g at 1. Petitioner indicated that he wished to plead guilty pursuant to a negotiated plea

---

[6] 18 Pa. C.S.A. § 3126(a)(7).
[7] 18 Pa. C.S.A. § 4302.
[8] 18 Pa. C.S.A. § 6301(a)(1).
[9] Petitioner's daughter was 11 years old when the underlying incident occurred and was 15 years old when she reported it to the police.
[10] Between his arrest and the Guilty-Plea/Sentencing hearing, Petitioner filed a number of *pro se* motions as follows: "Writ of Habeas Corpus," "Petition to Dismiss," "Motion to Release on Nominal Bail, all filed on or about July 18, 2014. "Motion for Ineffective Counsel" filed on or about July 29, 2014. Another "Writ of Habeas Corpus" filed on or about August 12, 2014 and a "Motion to Reduce Bail," filed on or about August 21, 2014. Because Petitioner was represented by Samuel Encarnacion, Esquire, when each of these *pro se* filings was submitted, they were all forwarded to Attorney Encarnacion for his review.

2

agreement with the following terms. (See id. at 2:7-25, 3:12-14, 15:5-9.) On Count 1-Rape of a Child (F-1),[11] Count 2-Aggravated Indecent Assault of a Child (F-1),[12] and Count 3-Involuntary Deviate Sexual Intercourse with a Child Less than 13 Years of Age (F-1),[13] he would serve twelve and one-half (12 ½) to twenty-five (25) years of incarceration on each Count. (Id. at 2:7-15.) On Count 4-Indecent Assault of a Child (F-3),[14] Petitioner would serve two (2) to four (4) years of incarceration. (Id. at 2:16-17.) On Count 5-Incest (F-2),[15] he would serve to ten (10) to twenty (20) years of incarceration. (Id. at 2:18.) On Count 6-Corruption of a Minor (M-1),[16] He would serve two (2) to four (4) years of incarceration. (Id. at 2:19-20.) The Sentences on all Counts were to be concurrent with each other. (Id. at 2:21-22.) Thus, On Counts 1-6, Petitioner would receive an agreed-upon aggregate sentence of twelve and one-half (12½) to twenty-five (25) years. In addition, the Plea Agreement called for Megan's Law to apply, specifically Sex Offender Conditions 1-20 and no contact with the victim. (Id. at 2:22-25.)

Before accepting Petitioner's guilty plea, I conducted an extensive, on-the-record colloquy to ensure that he understood the rights he gave up by pleading guilty and that his plea was fully knowing and voluntary. (Id. at 3:16-21.) This colloquy included discussion of the Commonwealth's invocation of the ten-year mandatory minimum

---

[11] 18 Pa. C.S.A. § 3121(c).
[12] 18 Pa. C.S.A. § 3125(b).
[13] 18 Pa. C.S.A. § 3123(b).
[14] 18 Pa. C.S.A. § 3126(a)(7).
[15] 18 Pa. C.S.A. § 4302.
[16] 18 Pa. C.S.A. § 6301(a)(1). During the Guilty Plea/Sentencing Hearing, ADA King and I both incorrectly referred to this Count (Corruption of Minors) as a "felony of the third degree." (N.T. Guilty Plea & Sentencing Hr'g. at 2:19-20, 12:3-6.) The Plea Agreement, as reflected in the Guilty Plea slip, both Informations, the Oral Colloquy, and the Sentencing Order, indicates that the Parties agreed that this Count should be amended from an F-3 to a misdemeanor of the first degree (M-1). (Id. at 11:25.) Specifically, on the guilty plea slip, the "F-3" is crossed off and "M-1" is written in next to it. Regardless of whether Count 6 is an F-3 or M-1, the sentence I ordered on that Count is proper.

3

sentence[17] on Counts 1,[18] 2,[19] and 3[20] due to the victim's being less than thirteen years of age.[21] (Id. at 6:16-19, 8:10-13, 9:23-10:1.) I also accepted a seven-page written guilty plea colloquy, a signed plea agreement form, and a guilty plea slip that Petitioner had reviewed with his attorney before signing them. (See id. at 4:23-5:25.) Petitioner indicated that he had signed these documents fully understanding their meaning and legal effect and verified that his handwritten answers on the colloquy form were accurate. (Id. at 5:6-25.) Furthermore, when Petitioner hesitated and indicated that he might have been innocent of one of the crimes charged, I stopped the Proceeding, only allowing Petitioner to continue with his guilty plea after he had reviewed his decision with his attorney. (Id. at 6:23-7:18.)

Petitioner then indicated that he understood the charges and maximum penalties he faced and that I was not bound by the terms of the negotiated agreement until and unless I accepted it and that he still wished to plead guilty. (Id. at 6:1-13:1.) After the Assistant District Attorney summarized the evidence, Petitioner admitted to performing the actions as summarized. (Id. at 13:2-24.) He next indicated that he understood the trial rights he would forfeit by pleading guilty and that his decision to plead guilty was fully voluntary and in no way the result of the effects of medication, force, coercion or promises. (Id. at 4:4-22, 14:1-15:18.) Petitioner also stated that he was satisfied with the services of Attorney Encarnacion. (Id. at 15:16-18.) After Petitioner addressed his

---

[17] The Commonwealth could also have invoked a "second-strike" ten-year mandatory minimum, due to Petitioner's prior conviction for robbery under 42 Pa.C.S.A. § 9714(A). (See Sentencing Guidelines Worksheet.)
[18] 18 Pa. C.S.A. § 3121(c).
[19] 18 Pa. C.S.A. § 3125(b).
[20] 18 Pa. C.S.A. § 3123(b).
[21] 42 Pa.C.S.A. § 9718.

4

family, Attorney Encarnacion noted that, in his opinion, Petitioner acknowledged responsibility for the charged offenses and implied that Petitioner hoped that the instant guilty plea would bring a sense of closure to Petitioner's family (Id. at 15:22-16:16.) After that, the victim—Petitioner's biological daughter—addressed the Court, noting the difficulties that Petitioner's crimes had caused their family. (Id. at 16:17-17:8.) Only then did Petitioner apologize to his family. (Id. at 17:9-12.)

I found Petitioner's pleas to have been knowingly and voluntarily made, accepted the pleas as presented and sentenced Petitioner according to the terms of the Plea Agreement. (Id. at 17:15-18:6.) Specifically, on Counts 1-6, I gave Petitioner an aggregate sentence of twelve and one-half (12½) to twenty-five (25) years with 397 days of time credit, with all time being concurrent.[22] (See id. at 18:14, Plea Agreement; Sentencing Order, 12/01/2014, at 1-3.)[23] In addition, I ordered Petitioner to have no contact with the victim (his daughter) or her family, noted that Megan's Law applied to Petitioner,[24] and imposed Sex Offender Conditions 1-20. (N.T. Guilty Plea & Sentencing Hr'g. at 18:14-19:21, Sentencing Conditions Order, 12/01/2014, at 3.) Petitioner stated that he fully understood those conditions and had reviewed them with his attorney before signing the form acknowledging the same. (N.T. Guilty Plea & Sentencing Hr'g.

---

[22] I ordered Petitioner to have Time Credit from October 31, 2013 (the Arrest Date provided in the Complaint) to December 1, 2014 (the Sentencing Date).

[23] On Count 1-Rape of a Child (F-1), Count 2-Aggravated Indecent Assault of a Child (F-1), and Count 3 (Involuntary Deviate Sexual Intercourse with a Child Less than 13 Years of Age (F-1) I sentenced Petitioner to twelve and one-half (12 ½) to twenty-five (25) years of incarceration on each Count. On Count 4-Indecent Assault of a Child (F-3), I sentenced Petitioner to two (2) to four (4) years of incarceration. On Count 5-Incest (F-2), I sentenced Petitioner to ten (10) to twenty (20) years of incarceration. On Count 6-Corruption of a Minor (M-1), I sentenced Petitioner to two (2) to four (4) years of incarceration. The Sentences on Counts 1-6 (all counts) were concurrent with each other, in accordance with the Plea Agreement.

[24] Petitioner waived his right to have me read him the Megan's Law registration requirements and stated that he had signed the Notice of Registration Form and fully understood the requirements. (N.T. Guilty Plea & Sentencing Hr'g. at 18:14-23.)

at 19:10-21.) Petitioner also waived his right to postpone sentencing prior to his Sexually Violent Predator evaluation, stating that he had signed the corresponding form and wished to be sentenced immediately. (Id. at 18:25-19:9.) I directed Petitioner to undergo assessment by the Sexual Offender Assessment Board, with the report of that assessment to be submitted to the District Attorney's Office within 90 days of sentencing. (Id. at 20:25-21:4.) Finally, Petitioner stated that he fully understood his post-plea appeal rights and had reviewed them with Attorney Encarnacion before signing the associated form. (Id. at 21:5-12.)

Petitioner did not file any direct appeal. Petitioner filed a timely *pro se* PCRA Petition on or about October 7, 2015.[25] In my October 13, 2015 Order, I appointed Russell Pugh, Esq. to represent Petitioner during the PCRA proceedings. On or about December 14, 2015, Petitioner submitted a timely "Amended Petition for Post-Conviction Collateral Relief" requesting a hearing on Petitioner's Amended Motion. On or about December 18, 2015 the Commonwealth submitted its Response, agreeing that an evidentiary hearing was necessary.

The PCRA hearing was held on February 12, 2016. Russell Pugh, Esquire, represented Petitioner at the PCRA hearing while Amber Czerniakowski represented the Commonwealth. (N.T. PCRA Hr'g., 02/12/2016 at 1.) The sole issue raised at the hearing was whether guilty plea counsel Samuel Encarnacion "properly addressed or

---

[25] Petitioner's Judgment of Sentence became final on December 31, 2014, which was 30 days after the Judgment of Sentence was entered on December 1, 2014. See 42 Pa. C.S.A. § 9545(b)(3) (noting that, under the PCRA, a "judgment becomes final . . . at the expiration of time for seeking the review."); Pa.R.Crim.P. 903 (noting that the notice of appeal from a final order like my December 1, 2014 Judgment of Sentence "shall be filed within 30 days after the entry of the order from which the appeal is taken). According to the PCRA, Petitioner had until December 31, 2015 to file his PCRA Petition. Thus, Petitioner's Petition filed on or about October 7, 2015 is timely. See 42 Pa.C.S.A. § 9545(b)(1) (noting that any PCRA Petition "shall be filed within one year of the date the judgment becomes final . . ."

6

explored" Petitioner's alibi defense. (Id. at 3:7-9.) Three witnesses testified: Samuel Encarnacion, Esquire; Maria Reyes, Petitioner's wife and the victim's biological mother; and Petitioner.

Attorney Encarnacion testified that the Information provided to him by the Commonwealth listed the date of the offense as "on or about" January 1, 2009. (Id. at 4:9-15.) He added that, while he was not aware of the second Information filed in the case that listed the offense date as January 1, 2009, without the "on or about" language, he had seen that document before the PCRA Hearing. (Id. at 5:3-13.) He also noted that the Complaint and Affidavit of Probable Cause explicitly stated that the date of the offense was "a few weeks after" January 1, 2009. (Id. at 5:17-25.)

He noted that he had several discussions with Petitioner about Petitioner's whereabouts around the time of the offense, specifically about Petitioner's claim that he was in New York at a funeral during the first few days of January of 2009. (Id. at 6:1-25.) He indicated that, due to their conversations, Petitioner was very familiar with the discovery, especially the time frame of the alleged offense. (Id. at 11:1-3.) He added that he had reviewed the discovery with Petitioner, including, among other things, the Criminal Information, and Affidavit of Probable Cause, which indicated that the offense actually occurred a few weeks after January 1, 2009. (Id. at 11:9-15.) He further noted that, as a result, he had informed Petitioner that his trip to New York could not provide a complete alibi defense because it did not create a "legal impossibility that [Petitioner] could not have committed the crime" due to the fact that he returned to Lancaster from New York within the allegation period. (Id. at 6:9-22, 11:4-15.) He added that he also did not pursue an alibi defense because Petitioner had provided a detailed confession to

7

the crimes, which never raised the issue of a potential alibi. (Id. at 11:19-24, 13:23-14:1.) He also stated that Petitioner never asked him to file any post-sentence motion to withdraw his guilty plea or any direct appeal. (Id. at 12:1-7.)

He added that, in his opinion, Petitioner decided to plead guilty in part because the Commonwealth offered to reduce his minimum sentence from fifteen to twelve and one-half years. (Id. at 13:6-17.) Attorney Encarnacion further testified that Petitioner's decision to plead guilty was fully Petitioner's and that he had advised Petitioner that the Commonwealth had a strong case due to his detailed confession, especially Petitioner's statement that he had told the police that "his daughter was right; that he raised his daughter to tell the truth and she was right." (Id. at 13:18-14:16.) He also stated that the Commonwealth had filed a Motion to introduce the prior bad act evidence of similar intra-family molestation with a stepdaughter that had allegedly occurred during the same time period as the allegations in the instant case and that the Court's ruling on that Motion was outstanding at the time Petitioner entered his guilty plea. (Id. at 12:23-13:1, 14:2-6.) He added that he believed that, had I granted the Commonwealth's Motion, the strong case against Petitioner would have been made even stronger and that the Commonwealth would have likely withdrawn the guilty plea offer as a result. (Id. at 14:7-13.) Furthermore, he stated that he met with several of Petitioner's family members and informed them that he could not speak with them about Petitioner's case because he was not their attorney and did not represent their interests. (Id. at 8:1-9:4.)

Attorney Encarnacion then commented that he was prepared to try Petitioner's case and that he did not think Petitioner's alibi would have had much of an effect on the jury in light of the Commonwealth's overwhelming evidence, especially Petitioner's

8

confession and statements confirming the veracity of his daughter's account of the crimes. (Id. at 15:2-20.) Specifically, he testified that, while he did not think Petitioner had an alibi, he would have raised the issue of the trip to New York to show that Petitioner was not in Lancaster for at least a part of the period during which the crimes were alleged to have occurred. (Id. at 15:2-20.) He also noted that, according to the applicable jury instruction,[26] he was aware that the date of the offense is not an element of the crimes as charged against Petitioner. (Id. at 15:21-25.) He then confirmed that he had thoroughly reviewed the questions and Petitioner's answers on the guilty plea colloquy and that Petitioner had no questions, and that he met frequently with Petitioner at Lancaster County Prison. (Id. at 16:1-23.) After looking at a police report, Attorney Encarnacion stated that the date of the alleged offense was "a few weeks past New Year's Day, [20]09" and was consistent with the dates provided in the Affidavit of Probable Cause and the Commonwealth's pretrial motions. (Id. at 17:18-18:7.)

Maria Reyes, the wife of Petitioner and the biological mother of the victim testified next. (Id. at 21:10-21.) She testified that Petitioner was in New York City for a funeral from around December 20, 2008 until the 6th or 7th of January, 2009, and that they had traveled to New York and returned to Lancaster in the same vehicle and were nearly always together while in New York. (Id. at 24:7-16, 25:24-26:10.) Petitioner and the Commonwealth then stipulated that eleven potential witnesses would testify that Petitioner was in New York City from approximately December 22, 2008 until January 5, 6 or 7, 2009. (Id. at 27:1-9.)

---

[26] Pennsylvania Standard Criminal Jury Instruction 3.19.

9

Petitioner testified last. (Id. at 27:12-14.) In large part, his testimony directly contradicted that of Attorney Encarnacion, except to confirm that Attorney Encarnacion had spoken with his family and that the two of them had met several times to discuss Petitioner's potential alibi defense as well as Petitioner's options to either plead guilty or proceed to trial. (Id. at 31:23-33:16.) Specifically, during his PCRA Hearing, Petitioner claimed that he did not commit the charged offenses and that he pled guilty because Attorney Encarnacion supposedly told him that if he did not plead guilty, then Attorney Encarnacion would ensure that Petitioner would lose at trial and would receive a sentence of 40-80 years. (Id. at 28:8-21.) He further stated that he was in New York City for a funeral from approximately December 22, 2008 until January 7, 2009. (Id. at 29:19-21.) He then added that, according to his recollection, the Commonwealth's initial offer was not 15 to 35 years, as Attorney Encarnacion had testified, but was for 10 to 20 years, claiming that the discrepancy was due to the Commonwealth's supposedly carrying out its promise to Petitioner when he was incarcerated in Lancaster on a DUI in 2007 that, if he ever came back to jail, the Commonwealth would "give him an extra five to 15." (Id. at 33:17-24.)

Next, while Petitioner claimed to be unable to remember the on-the-record guilty plea colloquy I conducted with him, he conceded that such a colloquy had occurred. (Id. at 34:5-36:15.) Specifically, he stated that he did not recall telling me that his plea was not the result of force or coercion or that his decision to plead guilty was fully voluntary or that he was satisfied with the services of Attorney Encarnacion. (Id.) Petitioner then claimed that his purported confession to police was not a confession at all, but was simply him echoing what his daughter had said and confirming that, at the time, she

10

never lied. (Id. at 36:1-14.) He immediately qualified this statement about his daughter's habit for veracity, claiming that he does not "recognize [his] daughter these days because she has been lying." (Id. at 36:10-14.) Finally, Petitioner acknowledged that he had admitted to the factual basis of the charges during the guilty plea hearing. (Id. at 38:1-3.)

After the PCRA Hearing, Petitioner submitted a timely "Brief Urging Post-Conviction Relief on April 21, 2016 and the Commonwealth filed a timely response on April 29, 2016.

## DISCUSSION

This appeal is governed by the Post-Conviction Relief Act ("PCRA"). The PCRA provides for an action by which a petitioner convicted of a crime they did not commit or serving an illegal sentence may obtain collateral relief. 42 Pa.C.S.A. § 9542. To be eligible for relief under the PCRA, a petitioner must plead and prove all four of the elements of the statute by a preponderance of the evidence. Id. § 9543(a). First, the PCRA Petition must be timely. Here, Petitioner's PCRA Motion was timely filed.[27] Second, a defendant must have "been convicted of a crime under the laws of this Commonwealth," and must be imprisoned, on probation, or on parole at the time that relief is requested. Id. § 9543(a)(1)(i-iii). Petitioner was convicted on December 1, 2014 and was incarcerated at his assigned SCI when he filed his *pro se* PCRA Petition and

---

[27] Judgment of sentence was entered on December 1, 2014. A PCRA Petition must be filed within one year of the date the judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). Judgment becomes final at the conclusion of direct review, or at the expiration of time for seeking the review. Id. §9545(b)(3). Petitioner did not file a direct appeal. Therefore, his sentence became final on December 31, 2014. See Pa.R.A.P. 903(a) (providing that an appellant has 30 days from the entry of the Trial Court Order within which to file a notice of appeal). Here, Petitioner filed his *pro se* PCRA Petition on or about October 7, 2015, and the Amended Petition was filed on or about December 14, 2015, both well within the one-year filing period. Thus, the PCRA Petition was timely.

11

the Amended PCRA Petition. Accordingly, this element is established. Third, Petitioner must show that the issue has not been previously litigated or waived. Id. § 9543(a)-(b).[28] The issue here has not been reviewed by the highest potential appellate court, has not been previously raised or decided in a prior collateral proceeding, and could not have been raised previously by Petitioner. Thus, this element is established. Finally, a defendant must prove that his sentence or conviction was the result of one or more errors enumerated in the statute. Id. § 9543(a)(2).

Petitioner raises one issue, claiming that his trial counsel provided ineffective assistance by failing to adequately investigate or develop Petitioner's alibi defense. (Pet.'s Br. Urging Post-Conviction Relief at 5.) Such a claim is cognizable under the PCRA. See, e.g., Commonwealth v. Prendes, 97 A.3d 337, 351-52 (Pa. Super. Ct. 2014) (guilty plea generally); Commonwealth v. Barndt, 74 A.3d 185, 191-92 (Pa. Super. Ct. 2013) (citation omitted) (ineffective assistance and guilty plea); Commonwealth v. Casner, 461 A.2d 324, 328-29 (Pa. Super. Ct. 1983), accord Commonwealth v. Elliott, 466, A.2d 666, 667 (Pa. Super. Ct. 1983) (ineffective assistance and alibi).

The Commonwealth responds that Petitioner's claim of alibi does not have arguable merit because the trip to New York does not cover the time period when the crimes occurred. (Commw.'s Br. Opposing Pet's.' Br. Urging Post-Conviction Relief at 4.) The Commonwealth further argues that Petitioner's guilty plea counsel had a

---

[28] "An issue has been previously litigated when the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue or the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence." 42 Pa.C.S.A. § 9544(a) (internal punctuation omitted). An issue is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding." Id. § 9544(b).

reasonable basis for not further investigating Petitioner's alibi claim because both Petitioner and guilty plea counsel were aware of the dates Petitioner was in New York and further investigation would not have expanded or altered that date range to cover the time period when the crimes occurred. (Id.) In other words, the Commonwealth argues that any further investigation into Petitioner's claim of alibi would have been a waste of time. (Id.)

The Commonwealth adds that Petitioner's attempt to bind the Commonwealth to January 1, 2009 as the date of the offense is of no moment because Petitioner waived any challenge to date of offense as listed in the Information by not raising that issue on direct appeal, but by waiting until the PCRA Petition to do so. (Id. at 7 n.7.) The Commonwealth further contends that, even if Petitioner's claim in this regard is not waived, it is meritless because, under the applicable case law, any variance in the dates provided on an Information is fatal only if it would mislead Petitioner or impair a substantial right of his and that, in the case *sub judice*, the discrepancy would not have misled Petitioner or impaired one of his substantial rights because both Petitioner and Attorney Encarnacion were well aware of the dates of the offenses as alleged and as described in the Informations. (Id.) (citing Commonwealth v. Einhorn, 911 A.2d 960, 978 (Pa. Super. Ct. 2006)); see Commonwealth v. Ohle, 470 A.2d 61, 73 (Pa. 1983.)

At the outset, I note that "[a]fter an accused enters a guilty plea, appellate rights are limited to challenges to the validity of the plea, the legality of the sentence imposed, or the trial court's jurisdiction." Commonwealth v. Flood, 627 A.2d 1193, 1198-99 (Pa. Super. Ct. 1993) (citing Commonwealth v. Harvey, 595 A.2d 1280, 1282 (Pa. Super. Ct. 1991), *appeal denied*, 608 A.2d 28 (Pa. 1991). In other words, "[w]hen a defendant

13

enters a guilty plea[,] the only legally cognizable issues in a post[-]conviction proceeding are those [that] affect either the voluntariness of the guilty plea or the legality of the sentence. Commonwealth v. Casner, 461 A.2d 324, 325 (Pa. Super. Ct. 1983). Therefore, two questions remain: (1) whether Petitioner's guilty plea resulted from ineffective assistance by his guilty plea counsel, Samuel Encarnacion, Esq.; and (2) whether Petitioner's guilty plea was otherwise invalid. The answer to both questions is "no." These two related but separate claims will be addressed in turn.

## INEFFECTIVE ASSISTANCE OF GUILTY PLEA COUNSEL

Under the PCRA, a guilty plea resulting from allegedly ineffective assistance will provide a basis for relief only:

> if the ineffectiveness caused an involuntary or unknowing plea. This is similar to the 'manifest injustice' standard applicable to all post-sentence attempts to withdraw a guilty plea. The law does not require that the appellant be pleased with the outcome of his decision to enter a plea of guilty. All that must be shown is that the appellant's decision to plead guilty be knowing, voluntary and intelligently made.

Commonwealth v. Diaz, 913 A.2d 871, 872 (Pa. Super. Ct. 2006) (citing Commonwealth v. Lewis, 708 A.2d 497, 500-01 (Pa. Super. Ct. 1998)). "[A] manifest injustice occurs when a plea is not tendered knowingly, intelligently, voluntarily, and understandingly." Commonwealth v. Prendes, 97 A.3d 337, 352 (Pa. Super. Ct. 2014) (citation omitted). To determine the voluntariness of a guilty plea, the Pennsylvania Rules of Criminal Procedure "require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea." Prendes, 97 A.3d 337 at 352 (citing Commonwealth v. Hodges, 789 A.2d 764, 765 (Pa. Super. Ct. 2002)); see Pa.R.Crim.P. 590. To evaluate the voluntariness of the plea, a reviewing court

14

should consider "the totality of the circumstances surrounding the plea." Commonwealth v. Allen, 732 A.2d 582, 588-89 (Pa. 1999).

In an ineffectiveness claim, a court presumes that defense counsel provided effective assistance. Commonwealth v. Rollins, 738 A.2d 435, 441 (Pa. 1999); *accord* Strickland v. Washington, 466 U.S. 668, 689 (1984), Commonwealth v. Reyes-Rodriguez, 111 A.3d 775, 779-80 (Pa. Super. Ct. 2015). To overcome the presumption, a defendant must demonstrate by a preponderance of the evidence that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for the action or inaction; and (3) the defendant has been prejudiced by the ineffectiveness of counsel. Reyes-Rodriguez, 111 A.3d 775 at 780. A defendant's claim of ineffectiveness fails if he is unable to prove one or more of the three prongs. Commonwealth v. Reyes, 870 A.2d 888, 896-97 (Pa. 2005); *accord* Commonwealth v. Fears, 86 A.3d 795, 804 (Pa. 2014). Regarding prong (1), "counsel cannot be deemed ineffective for failing to raise a meritless claim." Commonwealth v. Rivera, 108 A.3d 779, 789 (Pa. 2014) (citation omitted). Regarding prong (2), counsel will not be deemed ineffective if any reasonable basis exists for his actions. Commonwealth v. Diehl, 61 A.3d 265, 268 (Pa. Super. Ct. 2013) (citing Commonwealth v. Carter, 656 A.2d 463, 465 (Pa. 1995)). Regarding prong (3), "to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Commonwealth v. Barndt, 74 A.3d 185, 191 (Pa. Super. Ct. 2013) (internal quotation marks and citation omitted). "Failure to establish any prong of the test will defeat an ineffectiveness claim." Commonwealth v.

Walker, 36 A.3d 1, 7 (Pa. 2011) (quoting Commonwealth v. Basemore, 744 A.2d 717, 738 n.23 (Pa. 2000)); see Commonwealth v. Rollins, 738 A.2d 435, 441 (Pa. 1999).

Petitioner argues that his guilty plea counsel provided ineffective assistance by failing to investigate or develop Petitioner's alibi defense. (Pet.'s Br. Urging Post-Conviction Relief at 5.) This claim is meritless under the PCRA because it fails all three prongs of the PCRA's ineffective assistance test: (1) the underlying claim has no arguable merit, (2) guilty plea counsel had a reasonable basis for his action or inaction, and (3) Petitioner did not suffer prejudice as a result. Commonwealth v. Reyes-Rodriguez, 111 A.3d 775, 779-80 (Pa. Super. Ct. 2015) (establishing requirements for to sustain claim under PCRA for ineffective assistance by guilty plea counsel).

Initially, Petitioner's claim must fail because his claim is meritless and "counsel cannot be deemed ineffective for failing to raise a meritless claim." Commonwealth v. Rivera, 108 A.3d 779, 789 (Pa. 2014) (citation omitted). During the guilty plea, Petitioner admitted that he had committed the crimes as described by the Commonwealth and the statements of his daughter, notwithstanding his trip to New York. (N.T. Guilty Plea & Sentencing Hr'g. at 13:2-24, 16:17-17:8.) Moreover, Petitioner apologized to his family for those offenses after his daughter, the victim of his crimes, related the pain and suffering that Petitioner's crimes had caused her and their family. (Id. at 16:17-17:12.) Critically, Petitioner's instant claim also flatly contradicts his detailed confession to police, during which Petitioner never mentioned his trip to New York, and his statement that that his daughter, who reported the crimes, always told the truth. (Id. at 15:2-20, 11:19-24, 13:23-14:1.)

16

Put differently, Petitioner's purported alibi was no alibi. It is settled law that "[a]n alibi is 'a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party.'" Commonwealth v. Rainey, 928 A.2d 215, 234 (Pa. 2007) (quoting Commonwealth v. Roxberry, 602 A.2d 826, 827 (Pa. 1992)) (internal quotation omitted), accord Commonwealth v. Pounds, 417 A.2d 597, 602 (Pa. 1980) (internal quotation omitted.) Furthermore, "'[a]t the core of an alibi defense is, of course, consistency between the date and time of the crime and that of the defendant's alibi.'" Commonwealth v. Ali, 10 A.3d 282, 316 (Pa. 2010) (quoting Commonwealth v. [Raymond] Johnson, 966 A.2d 523, 538 & n.5 (2009)). Here, the relevant "date and time of the crime" is a few weeks after January 1, 2009, as indicated in the discovery documents. (N.T. PCRA Hr'g. at 5:17-25); Commonwealth v. Ali, 10 A.3d 282, 316 (Pa. 2010). The relevant "date and time of [Petitioner's] alibi" is from approximately December 22, 2008 until, at the latest, January 7, 2009. (N.T. PCRA Hr'g. at 27:1-9, 29:19-21); Ali, 10 A.3d 282 at 316. Thus, there is absolutely no "consistency between the date and time of the crime and that of [Petitioner's] alibi." Ali, 10 A.3d 282 at 316. That the Commonwealth need not prove the time of the offense as an element of the crimes charged only strengthens this conclusion. (N.T. PCRA Hr'g. at 15:21-25) (noting Pennsylvania Standard Criminal Jury Instruction 3.19.)

In other words, Petitioner's claim has absolutely no merit, let alone "reasonable merit," because the discovery documents in concert with Petitioner's own testimony about his return date from New York explicitly negate that alibi. (Id. at 5:17-25) (discovery documents), (Id. at 27:1-9) (stipulation), (Id. at 29:19-21) (Petitioner's

17

testimony.) Even if Petitioner returned to Lancaster on the latest possible date of January 7, 2009, he would have been in Lancaster and thus able to commit the offenses as charged within the time period described in the police reports and Affidavit of Probable Cause. (Id. at 5:17-25, 6:9-22, 11:4-15, 17:18-18:7.) Moreover, Attorney Encarnacion provided credible testimony confirmed by Petitioner that he had discussed the dates of the offenses at least several times with Petitioner, that Petitioner was quite familiar with that discovery, and that they had discussed Petitioner's alibi claim and why Petitioner's absence from Lancaster was not a true alibi because it only covered the first week in January 2009, when the offenses were alleged to have been committed weeks later. (Id. at 6:1-25, 11:1-15, 16:1-23) (Attorney Encarnacion's statements), (Id. at 31:23-33:16) (Petitioner's Statements); see Commonwealth v. Ali, 10 A.3d 282, 316 (Pa. 2010) (no ineffective assistance for guilty plea counsel's failure to develop meritless alibi claim).

I find Attorney Encarnacion's testimony in this regard at the PCRA Hearing to be credible because he remembered when and where his conversations with Petitioner occurred and because his account is confirmed in the Guilty Plea Hearing transcript. (Id. at 16:1-23.) On the other hand, I find Petitioner's testimony to the contrary to be not credible because it is entirely self-serving and at variance with the record. Initially, his statement that the minimum offer from the Commonwealth was suddenly increased by five years as a result of incarceration for DUI in 2007 defies belief. (See id. at 33:17-24.) Additionally, Petitioner's bald, unsupported allegation that Attorney Encarnacion would deliberately sabotage Petitioner's case if Petitioner chose to go to trial in order to ensure that Petitioner would receive a sentence of 40-80 years is equally ludicrous. (See id. at

18

28:8-21.) Furthermore, Petitioner's contentions that he could not recall his answers during the guilty plea colloquy despite the transcript and written waiver form to the contrary are similarly self-serving. (Id. at 34:5-36:15.) Finally, I find his attacks on the integrity of his own daughter, the victim of his crimes, by claiming that her allegations are now suddenly false despite his prior, repeated statements to the contrary untrustworthy and, frankly, under the circumstances, repugnant. (See id. at 36:1-14.)

I agree with the Commonwealth that, to the extent that Petitioner's argument depends exclusively on the Information providing the date of the offense as January 1, 2009 rather than "on or about" January 1, 2009, that argument is meritless. (See Pet's. Br. Urging Post-Conviction Relief at 4-5.) In Pennsylvania, "'indictments must be read in a common sense manner and are not to be construed in an overly technical sense.'" Commonwealth v. Einhorn, 911 A.2d 960, 978 (Pa. Super. Ct. 2006) (quoting Commonwealth v. Ohle, 470 A.2d 61, 73 (Pa. 1983)). A difference between Informations is not "fatal unless it could mislead the defendant at trial, impairs a substantial right or involves an element of surprise that would prejudice the defendant's efforts to prepare his defense" because "[t]he purpose of the indictment is to provide the accused with sufficient notice to prepare a defense." Einhorn, 911 A.2d 960 at 978. Here, the record makes abundantly clear that Guilty Plea Counsel and Petitioner knew the dates of the alleged offenses well in advance of Petitioner's guilty plea and that Petitioner was not misled, prejudiced or surprised by the discrepancy in any way. (N.T. PCRA Hr'g. at 6:1-25, 11:1-15, 16:1-23) (Attorney Encarnacion's statements); (Id. at 31:23-33:16) (Petitioner's Statements). Simply put, Petitioner's claim is meritless because Attorney Encarnacion "cannot be faulted for failing to pursue an alibi defense .

19

. . that would not even establish alibi." Commonwealth v. Ali, 10 A.3d 282, 316 (Pa. 2010.) Accordingly, Petitioner's claim must fail the first prong of the PCRA's ineffective assistance test.

Turning to prong (2) of the PCRA's ineffective assistance test, counsel will not be deemed ineffective if any reasonable basis exists for his actions. Commonwealth v. Diehl, 61 A.3d 265, 268 (Pa. Super. Ct. 2013) (citing Commonwealth v. Carter, 656 A.2d 463, 465 (Pa. 1995)). Specifically, "[t]o show ineffectiveness for not presenting alibi evidence, [Petitioner] must establish that [guilty plea] counsel could have no reasonable basis for his act or omission." Commonwealth v. Rainey, 928 A.2d 215, 234 (Pa. 2007).

I conclude that Attorney Encarnacion had a reasonable basis for his action or lack thereof in Petitioner's case. Initially, Attorney Encarnacion testified that he knew that Petitioner's absence from Lancaster failed to establish alibi and, accordingly, that his alibi claim was meritless. (N.T. PCRA Hr'g. at 15:2-20.) Thus, on that ground alone, Attorney Encarnacion had a reasonable basis for not investigating or developing a meritless claim. Moreover, Attorney Encarnacion asserted additional reasonable bases for not investigating or developing Petitioner's alibi claim. Namely, he did not think providing evidence of Petitioner's trip to New York would have held much weight with the jury because it did not cover dates of the alleged offenses, because the Commonwealth did not have to prove that the offense occurred on a specific date, and especially because of the Commonwealth's overwhelming evidence, including Petitioner's confession and the potential admission of evidence of similar allegations against another family member. (Id. at 12:23-13:1, 14:2-13) (prior bad acts evidence), (Id. at 15:2-25) (strength of alibi and elements of offense.) Attorney Encarnacion further

20

testified that, nevertheless, he was prepared to raise the issue of Petitioner's absence from Lancaster at trial insofar as he believed helpful to show inconsistencies in the dates of the offenses alleged by the Commonwealth. (Id. at 15:2-20.) Thus, Attorney Encarnacion had a reasonable basis for not investigating or developing Petitioner's alibi claim.Therefore, Petitioner's claim also fails the second prong of the PCRA's ineffective assistance test.

The third prong of the PCRA's ineffective assistance test is just as easily satisfied. Under the PCRA, "to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Commonwealth v. Barndt, 74 A.3d 185, 192 (Pa. Super. Ct. 2013) (internal quotation marks and citation omitted). As described above, Attorney Encarnacion did not commit any errors in handling Petitioner's guilty plea, but, even if he had, his behavior did not "prejudice" Petitioner under the PCRA. Again, Petitioner fails to present any evidence to support his claim of ineffective assistance beyond the bare assertion that Attorney Encarnacion failed to pursue Petitioner's alibi claim. (Pet's. Br. Urging Post-Conviction Relief at 4-6.) Moreover, Petitioner has failed to present a scintilla of evidence that, had Attorney Encarnacion more vigorously pursued Petitioner's alibi claims, Petitioner would have elected to go to trial instead of pleading guilty. In fact, Attorney Encarnacion provided credible testimony to the contrary. Specifically, Attorney Encarnacion noted (and Petitioner conceded) that they had thoroughly discussed Petitioner's alibi claim as well as the limited utility of such a defense, especially in light of Petitioner's confession, which would have almost certainly been admissible at trial. (N.T. PCRA Hr'g. at 6:9-22, 11:1-24, 13:23-14:1.)

21

Moreover, Petitioner here pled guilty pursuant to a negotiated plea agreement that he had signed, indicating that he was aware of the charges and the potential sentences he faced. (See Plea Agreement.) Furthermore, at the Guilty Plea Hearing, Petitioner was made aware of the charges, his absolute right to a jury trial on those charges and the possible sentences he faced, including the mandatory minimum, but chose to enter the negotiated guilty plea anyway. (N.T. Guilty Plea Hr'g. at 6:1-13:1) (describing charges and sentencing), (id. at 3:9-5:25, 14:6-15:18) (trial rights and desire to plead guilty.) Furthermore, Petitioner had multiple opportunities both before and during the Guilty Plea Hearing to insist on going to trial instead of pleading guilty, but chose to not avail himself of those opportunities. Put differently, deeper investigation by Attorney Encarnacion into Petitioner's alibi claim, such as contacting potential corroborating witnesses, would not have changed the date Petitioner returned to Lancaster, which was long before the crimes occurred. Thus, such investigation would not have provided Petitioner with any additional information that could have caused him to decide to go to trial instead of pleading guilty. Simply stated, it would have been a waste of time for Attorney Encarnacion and would not have revealed any new information that could have impacted the voluntariness of Petitioner's guilty plea. Thus, Petitioner has failed to show any probability, let alone a reasonable probability, that he would have insisted on a jury trial instead of a guilty plea as a result of that request. In short, Petitioner here was not prejudiced. Therefore, he has failed to show that his guilty plea resulted from ineffective assistance of counsel. Accordingly, his claim fails the third prong of the PCRA's ineffective assistance test.

22

## INVOLUNTARY GUILTY PLEA

I find now, as I did at that time, that Petitioner entered a knowing, voluntary, and intelligent guilty plea as demonstrated by the extensive on-the-record colloquy. During this colloquy, Petitioner indicated that he had voluntarily signed all documents associated with his guilty plea after he understood their meaning and legal effect, acknowledged that he understood the charges against him, listened to the Assistant District Attorney describe the factual basis for the charges, stated that he understood that he was forfeiting his right to trial by jury, understood that he was presumed innocent and that the Commonwealth had the burden of proving his guilt beyond a reasonable doubt, that he understood the permissible ranges of sentences and fines, and that I was not bound by the terms of the negotiated plea agreement unless and until I accepted the plea. (See generally, N.T. Guilty Plea & Sentencing Hr'g); See Commonwealth v. Prendes, 97 A.3d 337, 352 (Pa. Super. Ct. 2014) (stating requirements for adequate guilty-plea colloquy).

Furthermore, it is settled law that "one is bound by one's statements made during a plea colloquy, and may not [later] successfully assert claims that contradict such statements." Commonwealth v. Muhammad, 794 A.2d 378, 384 (Pa. Super. Ct. 2002) (citation omitted); accord Commonwealth v. Capelli, 489 A.2d 813, 819 (Pa. Super. Ct. 1985). In other words, a "defendant may not knowingly lie to the court while under oath" while entering a guilty plea. Commonwealth v. Pollard, 832 A.2d. 517, 524 (Pa. Super. Ct. 2003). Statements that may not be later contradicted include assertions that one is satisfied with the services of one's attorney and that one's plea has been voluntarily entered. See Commonwealth v. Stork, 737 A.2d 789, 791 (Pa. Super. Ct. 1999). Mere

23

"disappointment by a defendant in the sentence actually imposed does not represent manifest injustice" warranting the relief of withdrawal of a guilty plea. Muhammad, 794 A.2d at 384 (quoting Commonwealth v. Munson, 615 A.2d 343 (Pa. Super. Ct. 1992)). In other words, Pennsylvania "does not require that a defendant be totally pleased with the outcome of his decision to plead guilty, only that his decision be voluntary, knowing, and intelligent." Pollard, 832 A.2d 517 at 524. Finally, "the desire of an accused to benefit from a plea bargain is a strong indicator of the voluntariness of the plea." Id.

Here, Petitioner signed the guilty plea colloquy form, guilty plea slip, and plea agreement form, told me that his decision to plead guilty was voluntary and was his own decision, that he fully understood what he was doing and the rights he was forfeiting, and that he was fully satisfied with the services of Attorney Encarnacion. (N.T. Guilty Plea & Sentencing Hr'g. at 4:23-5:25) (Guilty Plea Colloquy Form and Guilty Plea Slip); (Id. at 3:12-15) (desire to plead guilty); (Id. at 14:6-15:18) (trial rights, voluntariness of plea and satisfaction with attorney's services.) He cannot later implicitly contradict these statements in his PCRA Petition and Brief. (See generally Def.'s Am. Mot. for Post-Conviction Relief; Pet's. Br. Urging Post-Conviction Relief.) While Petitioner may not be happy with the outcome of his guilty plea and might now regret his decision, he is bound by the statements that he made during the Guilty Plea Hearing. See Commonwealth v. Muhammad, 794 A.2d 378, 384 (Pa. Super. Ct. 2002). Petitioner was of sufficient age and intelligence to understand what he was doing when he pled guilty and cannot, in hindsight, assert that his guilty plea was not voluntary or that he was not satisfied with Attorney Encarnacion's representation. See Commonwealth v. Stork, 737 A.2d 789, 791 (Pa. Super. Ct. 1999). Finally, Petitioner's demonstrating a desire to benefit from the

24

negotiated plea agreement is a strong indicator of the voluntariness of the guilty plea. See Commonwealth v. Pollard, 832 A.2d. 517, 524 (Pa. Super. Ct. 2003) Under the Plea Agreement, Petitioner received a minimum sentence of twelve and one-half (12½) years, which was less than the Commonwealth's original minimum offer of fifteen (15) years and a mere two and one-half (2½) years above the mandatory minimum of ten years. (N.T. Guilty Plea & Sentencing Hr'g. at 2:7-25) (Plea Agreement); (N.T. PCRA Hr'g. at 13:6-17) (Commonwealth's original offer.) Critically, all sentences on both Dockets were concurrent, rather than consecutive. (N.T. Guilty Plea & Sentencing Hr'g. at 2:21.) It is unconscionable that Petitioner could accept these very real benefits of the bargain while simultaneously avoiding its burdens. In short, Petitioner got a fair deal considering the serious charges, strong evidence and his criminal history. Therefore, Petitioner's guilty plea was valid and was the product of Attorney Encarnacion's effective representation.

## CONCLUSION

For the reasons set forth above, I conclude Attorney Encarnacion did not provide Petitioner ineffective assistance of counsel and that Petitioner's guilty plea was not involuntary.

Accordingly, I enter the following:

25

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA      :

       v.                        :      No. 1001-2014

ERVIN REYES                   :

## ORDER

BY: WRIGHT, J.                                          May 24, 2016

AND NOW, this 24th day of May, 2016, upon consideration of Petitioner's *pro se* filings, deemed to be a Petition for Post-Conviction Collateral Relief, Amended Motion for Post-Conviction Collateral Relief, Supporting Brief, Commonwealth's Brief in Opposition, and hearings thereon:

IT IS HEREBY ORDERED that said Petition is DENIED for the reasons set forth in the preceding opinion.

I certify this document to be filed in the Lancaster County Office of the Clerk of the Courts.

BY THE COURT:

Jacquelyn E. Pfursich
Clerk of Courts

Attest:

JEFFERY D. WRIGHT
JUDGE

Copies to:

Amber Czerniakowski, Assistant District Attorney
Samuel Encarnacion, Esq.
Russell Pugh, Esq.

26